# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| SAMUEL SIGOLOFF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Cause No.: 4:22-cv-923 |
| **LLOYD J. AUSTIN, III**, | ) | |
| Individually and in his official capacity as | ) | **COMPLAINT** |
| United States Secretary of Defense; UNITED | ) | |
| STATES DEPARTMENT OF DEFENSE; | ) | |
| **CHRISTINE WORMUTH,** individually and in | ) | |
| her official capacity as Secretary of | ) | |
| the Army and, | ) | |
| **ANTHONY R. HALE** | ) | |
| individually and in his official capacity as | ) | |
| Commanding General of Fort Huachuca | ) | |
| | | |
| Defendants. | | |

Plaintiff, United States Army Major Samuel Sigoloff, (hereinafter "Plaintiff"), by and through his attorneys, Tully Rinckey, PLLC, as and for his Complaint against the defendants, Lloyd J. Austin, III, in his individual and official capacity as United States Secretary of Defense, Christine Wormuth, in her individual and official capacity as Secretary of the Army, Anthony R. Hale in his individual and official capacity as Commanding General of Fort Huachuca, (collectively "Defendants"), alleges the following:

## INTRODUCTION

1.      Plaintiff is a licensed medical provider in the United States Army who has been subjected to illegal retaliation and ongoing reprisal by his chain of command for his outspoken beliefs regarding the safety of the COVID-19 vaccine. Plaintiff has been threatened with the loss of his clinical privileges, his reputation in the military medical community has been irreparably

damaged, and he is now facing a loss of his career due to actions by the Defendants and their agents acting on their behalf.

2.      This action is based upon the United States Constitution, the Military Whistleblower Protection Act, the Administrative Procedure Act, Department of Defense regulations, and Department of the Army regulations, concerning the denial of Plaintiff's right to protection from agency action that is unlawful, contrary to law, and arbitrary and capricious.

3.      Plaintiff challenges the policies and actions detailed below on their face and as applied to Plaintiff.

4.      Defendants' policies and actions have and will continue to deprive Plaintiff of his inalienable rights and guarantees under the United States Constitution and federal law.

5.      Defendants committed each and every act alleged herein under the color of law and authority.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the United States Constitution and federal law.

7.      This Court has jurisdiction under 28 U.S.C. § 1346 because this is a civil action against the United States.

8.      This Court has jurisdiction under 28 U.S.C. § 1361 to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

9.      This Court has jurisdiction to review Defendants' unlawful actions and inactions and enter appropriate relief under the Administrative Procedure Act, 5 U.S.C. § 701-706.

10.     This Court has jurisdiction to review and enjoin ultra vires or unconstitutional agency action through an equitable cause of action. *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689-92 (1949).

11.     This Court has authority to award the requested declaratory relief pursuant to 28 U.S.C. §§2201-02; the requested injunctive relief pursuant to 5 U.S.C. § 702 and 28 U.S.C. § 2202; and costs and attorneys' fees pursuant to 42 U.S.C. § 1988(b).

12.     Venue is proper in this district court pursuant to 28 U.S.C. § 1391(e) because Defendants are officers and employees of the United States and agencies of the United States, Plaintiff is licensed in Texas and no real property is involved in this action.

## PLAINTIFF

13.     Plaintiff is a Board-certified family physician licensed in Texas and Nebraska.

14.     Plaintiff completed medical residency in Fort Benning, Georgia in 2015, where he was the first graduate of the program to have the skill of performing the procedure of screening colonoscopies.

15.     Plaintiff entered active duty as a commissioned officer in the United States Army in 2012 at Fort Benning, Georgia.

16.     Plaintiff has served in the United States Army since 2012 and has attained the rank of O-4, Major.

17.     Plaintiff has served in the United States Army for approximately ten (10) years.

18.     Plaintiff is currently stationed at Fort Huachuca, Arizona.

19.     Plaintiff practiced Family Medicine at Fort Wainwright, Alaska from 2018-2021.

20.     Plaintiff served as director of Primary Care at Fort Huachuca, Arizona from July 2021 to September 2021.

21.     At every duty station, Plaintiff has received stellar Officer Evaluation reports including being ranked in the top five (5) percent of physicians in his field.

22.     In or around September 2021, Plaintiff was verbally reprimanded for providing medical exemptions to the COVID-19 vaccine mandate. Plaintiff was instructed that he could not provide medical exemptions to the COVID-19 vaccine mandate by Lieutenant Colonel (LTC) Marie Carmona, a licensed Nurse and Commander of Raymond W. Bliss Army Health Center (RWBAHC).

## DEFENDANTS

23.     Defendant Lloyd J. Austin, III, is the United States Secretary of Defense. Secretary Austin issued a memorandum on August 24, 2021, which requires the United States Armed Forces to vaccinate all service members. Secretary Austin is a named defendant and is being sued in his individual and official capacity.

24.     United States Department of Defense (hereinafter "DoD") is an executive branch department that coordinates and supervises all agencies and functions of the government related to the United States Armed Forces, including the vaccination policies at issue herein.

25.     Defendant Christine Wormuth is the United States Secretary of the Army. Secretary Wormuth is in Plaintiff's chain of command. Secretary Wormuth is a named defendant and is being sued in her individual and official capacity.

26.     Defendant Anthony R. Hale is the commanding general of Fort Huachuca, Arizona. General Hale is in Plaintiff's chain of command. General Hale is a named defendant and is being sued in his individual and official capacity.

## FACTUAL BACKGROUND

### The President's Order to Vaccinate the Armed Forces

27.     On or about July 29, 2021, the President of the United States directed DoD to add the COVID-19 vaccine to its list of required immunizations for all service members. *See* The White House, "FACT SHEET: President Biden to Announce New Actions to Get More Americans Vaccinated and Slow the Spread of the Delta Variant" (July 29, 2021), https://www.whitehouse.gov/briefing-room/statements-releases/2021/07/29/fact-sheet-president-biden-to-announce-new-actins-to-get-more-americans-vaccinated-and-slow-the-spread-of-the-delta-variant/ ("Today, the President will announce that he is directing the Department of Defense to look into how and when they will add COVID-19 vaccination to the list of required vaccinations for members of the military."); Meghann Meyers and Howard Altman, *Military Times*, Oct. 21, 2021, https://www.militarytimes.com/news/your-military/2021/07/09/biden-orders-pentagon-to-consider-mandatory-covid-19-vaccination/.

### The Department of Defense Vaccine Mandate

28.     On August 24, 2021, Secretary Austin issued a memorandum entitled "Mandatory Coronavirus Disease 2019 Vaccination of Department of Defense Service Members" (hereinafter the "Vaccine Mandate").

29.     The Vaccine Mandate directs the DoD to vaccinate all active duty and reserve service members against COVID-19 vaccine unless the service member received a religious or medical waiver.

**Plaintiff issues Medical Exemption Waivers**

30.    On August 28, 2021, Plaintiff issued COVID vaccine medical exemptions to several service member patients that requested a waiver, determining in his medical opinion that such exemption was fully appropriate given each patient's medical history.

31.    On August 30, 2021, Plaintiff received an email from his direct supervisor and Deputy Commander of Clinical Services (DCCS), Lieutenant Colonel Rodriguez M.D., (hereinafter "LTC Rodriguez") regarding medical exemptions for the COVID vaccine. (*See* Exhibit 1).

**Plaintiff's Medical Waiver Requests are Invalidated by Nurse Hospital Commander**

32.    On September 9, 2021, Plaintiff was verbally admonished by LTC Rodriguez at the direction of Clinic Commander Lieutenant Colonel Carmona, RN (hereinafter "LTC Carmona") for issuing COVID-19 medical exemptions to service member patients. Plaintiff was told that the "implied message" stated in the email from LTC Rodriguez was "do not write any medical exemptions." LTC Rodriguez relayed an order from LTC Carmona to Plaintiff stating that Plaintiff must personally notify his patients that his granting of a medical exemption for the COVID-19 vaccine was no longer valid.

33.    On September 10, 2021, LTC Carmona published a memorandum stating that she had analyzed all the information regarding the medication Ivermectin and unilaterally directed a ban on prescribing Ivermectin for treatment of COVID-19. At this time, Ivermectin was covered under TriCare, and did not require prior authorization. (*See* Exhibit 2).

34.    On September 13, 2021, LTC Carmona placed Plaintiff on "Summary Suspension of Clinical Privileges" and began a clinical investigation against Plaintiff. (*See* Exhibit 3).

35.    On September 14, 2021, Plaintiff contacted the Medical Command Inspector General (MEDCOM IG) and was granted whistleblower status. (*See* Exhibit 4).

**Plaintiff is Subjected to Reprisal by his Chain of Command After Making Protected Communications**

36.     On September 16, 2021, LTC Carmona issued a memorandum (*See* Exhibit 5) stating that she would be the approval authority for all temporary medical exemptions.

37.     On September 17, 2021, LTC Carmona issued Plaintiff a "gag order" demanding him not to discuss the COVID-19 vaccine or virus issues during the duty day or while in uniform. (*See* Exhibit 6).

38.  On September 24, 2021, Plaintiff filed an affidavit as a medical subject matter expert witness in the case of *Robert et al*. v *Austin et al*.

39.     On October 1, 2021, Plaintiff was issued a General Officer Memorandum of Reprimand (GOMR) by Brigadier General Shan K. Bagby. Plaintiff was reprimanded for speaking to a company commander regarding his opinion on the legality of the FDA approval of the vaccine. (*See* Exhibit 7).

40. On October 15, 2021, Plaintiff was given a copy of the Quality Assurance Investigation (QAI) report. During the investigation, the investigator did not speak with any of Plaintiff's patients regarding the treatment they received. (*See* Exhibit 8).

41.     On November 18, 2021, Plaintiff was notified that he was under investigation for concerns of his medical treatment of patients at his previous duty station in Fort Wainwright, Alaska. Plaintiff was also given a negative counseling at Fort Huachuca by Deputy Commander LTC Brent Hayward, for attempting to report LTC Carmona to the Criminal Investigation Division for practicing medicine without a license.  Plaintiff was ordered to write an essay and cover the topic of Mutiny and Sedition—a clear act of retaliation to threaten him. Plaintiff was ordered to re-write the essay three times. (*See* Exhibit 9).

42.     On November 19, 2021, the Texas Medical Board (TMB) received a report alleging that Plaintiff violated disciplinary codes of conduct and acts of Unprofessional Conduct and disseminating misleading information. To this date, the Defense Health Agency (DHA) has not provided any documents to support these claims, despite TMB claiming they requested supporting evidence. (*See* Exhibit 10)

43. On December 10, 2021, Plaintiff was listed as a named plaintiff in *Coker et al* v *Austin et al*. Plaintiff outlined the shadow policy in place and the protection LTC Carmona received despite not following Department of Defense guidelines and practicing medicine without a license.

44.     On December 17, 2021, LTC Carmona issued Plaintiff a "Notice of Proposed Restriction of Clinical privileges" (*See* Exhibit 11). These restrictions included not *See*ing any patient age 17 or younger for six months as Plaintiff could "lead them to vaccine hesitancy." Plaintiff was also restricted from discussing COVID-19 with patients and was forced to pass his patients off to another physician to answer any questions related to COVID-19.

45.     On December 21, 2021, the TMB began an investigation into Plaintiff's license for dissemination of misleading information. (*See* Exhibit 12).

46.     On January 7, 2022, Plaintiff appealed the clinical restrictions recommended by LTC Carmona against Plaintiff by requesting a formal peer review hearing panel. (*See* Exhibit 13).

47.     On February 1, 2022, Senator Ron Johnson wrote a letter to Secretary Austin naming Plaintiff as a whistleblower (*See* Exhibit 14).

48.     On March 21, 2022, Plaintiff received a threatening letter from LTC Hayward for having protected communication with Congresswoman Ann Kirkpatrick (*See* Exhibit 15). The letter states: "This letter is to inform you that repeated congressional inquiries and accusations from you to the Army have crossed the threshold of "harassment". The accusations you have levied

against me to date are universally without merit, based upon opinion, events you couldn't possibly be aware of, or outright fabrication. Investigations by the Army to date have demonstrated as much. This letter is making you aware that I'm unwilling to tolerate further harassment from you. I will engage local law enforcement as well as my personal attorney to explore solutions to halt this behavior should it manifest again."

49.     On April 6, 2022, Plaintiff was suspended in Alaska following a clinical investigation into his practices during his time at Fort Wainwright, Alaska alleging that Plaintiff failed to meet the standard of care for three patients. However, Plaintiff had a Permanent Change of Station (PCS) and left Fort Wainwright in July 2021. (*See* Exhibit 16).

50.  On April 20, 2022, Plaintiff received the QAI report from Fort Wainwright. Plaintiff believes this was a sham peer review because the investigator did not speak to any of the patients treated by Plaintiff, nor did the investigator speak with any of Plaintiff's co-workers that knew Plaintiff for over eight years. (*See* Exhibit 17).

51.     On May 23, 2022, and June 24, 2022, Plaintiff received two Relief for Cause Officer Evaluation Records. The Relief for cause states that Plaintiff was counseled for asserting that the DoD and Army policies were illegal.  (*See* Exhibit 18).

52.  On July 5, 2022, David C. Golden, Chief Assistance and Investigations with the Department of the Army Inspector General sent a letter to Senator Ron Johnson. The letter states that the allegations in the investigation were not substantiated. Plaintiff requested the investigation documents through a Freedom of Information Act (FOIA) request. (*See* Exhibit 19).

53.     On July 15, 2022, Plaintiff was notified that his Privileging Authority, previously LTC Carmona, had been replaced by the new Privileging Authority, Colonel (COL) Brett Venable, commander at Fort Bliss, Texas. Like LTC Carmona, COL Venable is not licensed to practice

medicine. However, he took the QAI report from Arizona and held a credentials committee meeting on July 14, 2022, which is a day before he had the legal authority to do so. COL Venable proposed revoking Plaintiff's privileges and gave Plaintiff thirty (30) days to appeal this decision.  However, Plaintiff had already gone through all of the steps listed in the official appeal of LTC Carmona's decision on January 7, 2022. COL Venable, completely and wholly unknown to Plaintiff, took Plaintiff's documents and stripped Plaintiff of all privileges—a harsher punishment than given by LTC Carmona.

54.     Plaintiff is now relegated to performing data entry and correcting the formatting of clinic policy. Plaintiff is also forced to work longer hours than his colleagues and is given shorter lunch breaks.

55. On October 7, 2022, The Defense Health Agency in Fort Bliss, Texas held a Peer Review Panel and voted to restore Plaintiff's clinical privileges. The panel took less than thirty (30) minutes to restore his privileges, which is indicative that Plaintiff's initial suspension was completely meritless, purely vindictive, and retaliatory.

**DoD and Army Recognize Service Member Protections from Retaliation and Reprisal under the Military Whistleblower Protection Act**

56.     42 U.S.C. § 1034, defines a protected communication as any lawful communication to a Member of Congress or an Inspector General, as well as any communication made to a person or organization designated under competent regulations to receive such communications, which a member of the Armed Forces reasonably believes reports a violation of law or regulation (including sexual harassment, unlawful discrimination, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial or specific danger to public health or safety).

57.     DoD Directive 7050.6 prohibits: Restricting a military member from making a protected communication to a Member of Congress; an Inspector General (IG) of a DoD Component; a member of a DoD audit, inspection, investigation or law enforcement organization; or any other person or organization (including any person or organization in the chain of command) designated under component regulations or other established administrative procedures to receive such communications.

58.     DoD Directive 7050.6 states that "Taking (or threatening to take) an unfavorable personnel action or withholding (or threatening to withhold) a favorable personnel action as reprisal for making or preparing a protected communication to a Member of Congress; an IG of a DoD component; a member of a DoD audit, inspection, investigation or law enforcement organization; or any other person or organization (including any other person or organization in the chain of command) designated under component regulations or other established administrative procedures to receive such communications."

## FIRST CAUSE OF ACTION
### Violation of Plaintiff's Rights under the Military Whistleblower Protection Act 42 *U.S.C. § 1034*

59.     Plaintiff repeats and re-alleges each of the allegations set forth above in paragraphs 1-54 of this Complaint.

60.     The Military Whistleblower Protection Act (MWPA), 42 U.S.C. § 1034 states that the [g]overnment is prohibited from conducting a retaliatory investigation of a service member. 42 U.S.C. § 1034(2)(a)(v).

61.     The MWPA is a statute designed to provide a degree of protection [from retaliation] to military personnel who report information on improper or illegal activities by other military personnel. *Hisgen* v. *Fanning*, 208 F. Supp. 3d 186, 194 (D.D.C. 2016).

62. The MWPA broadly defines "retaliatory investigation" as an investigation requested, directed, initiated, or conducted for the primary purpose of punishing, harassing, or ostracizing a member of the armed forces for making a protected communication.  42 U.S.C. § 1034(2)(b).

63.    Upon information and belief, Plaintiff was subjected to a retaliatory Quality Assurance Investigation (QAI) following his disclosures to a member of Congress regarding perceived safety issues with the COVID-19 vaccine.

64.    Upon information and belief, this investigation was motivated by a deep-rooted hatred and desire to harm Plaintiff following his outspoken criticism of the COVID-19 immunization requirement and his voicing of concerns over the possible adverse side effects of receiving the vaccination.

65.    Upon information and belief, this investigation began after Plaintiff testified as a witness in *Robert* v. *Austin*, et al., was named as a plaintiff in *Coker* v. *Austin*, et al., and spoke to Senator Ron Johnson on January 24, 2022, regarding concerns over the safety of the vaccine and what appeared to be a direct correlation between COVID-19 vaccination and an increase in diagnoses of miscarriages, cancer, and other medical conditions.

66.    DHA-PM 6025.13, Vol. 3, Encl. 3, para. M, 3(c) states that there must be exceptional circumstances to initiate an investigation against a provider when that provider has no longer been practicing under the Respective Privileging Authority for the last twenty-four (24) months.

67.    The Quality Assurance Investigating Officer (QAIO) was appointed on April 7, 2022, and indicated that he reviewed a timeline of 2018-2021 during the course of his investigation into the allegations referenced above. No compelling justification was asserted or otherwise alleged in order to support reviewing Plaintiff's actions from nearly four (4) years prior.

68.   The fact that a QAI was initiated long after Plaintiff had executed a permanent change of station is prima facie evidence that the QAI was done in retaliation for Plaintiff voicing his concern over the COVID-19 vaccine and vaccine mandate.

69.   As stated above in paragraph 55 of this complaint, On October 7, 2022, The Defense Health Agency in Fort Bliss, Texas held a Peer Review Panel and voted to restore Plaintiff's clinical privileges. The panel took less than thirty (30) minutes to restore his privileges, which is further evidence that Plaintiff's initial suspension was completely meritless, purely vindictive, and retaliatory.

70.   Under the MWPA, an aggrieved service member may complain of retaliatory conduct to the Inspector General ("IG"), (*See* 10 U.S.C. § 1034(c)), and if the IG's investigation substantiates the allegation, the service member can petition the Army Board for Correction of Military Records "to correct an error or remove an injustice" from his or her military personnel record, id. § 1552(a)(1) or seek a "recommendation to the Secretary of the Army that disciplinary or administrative action be taken against" those responsible for the reprisal, 32 C.F.R. § 581.3(c)(2)(ii).

71.   As stated above in paragraph 52 of this complaint, after a careful review of the findings, the IG did not substantiate the allegations levied against Plaintiff.

72.  Any unfavorable personnel action taken against a complainant on the basis of a protected communication constitutes reprisal under MWPA and DoD Directive 7050.06.

73.   Accordingly, Plaintiff is entitled to a declaration that the Defendants' have violated Plaintiff's rights under the Military Whistleblower Protection Act, and an injunction against Defendants' policy and actions. Plaintiff is entitled to the reasonable cost of this lawsuit, including his reasonable attorneys' fees.

## SECOND CAUSE OF ACTION
### Violation of Plaintiff's Fifth Amendment Right to Due Process
### U.S. Const. amend. V.

74.     Plaintiff repeats and re-alleges each and every allegation contained above in this Complaint.

75.     The Fifth Amendment prohibits the government from depriving an individual of liberty or property interests without Due Process of law.

76.     Due Process protections are in place to ensure that adequate and credible information exists to take adverse actions against a medical provider. Upon information and belief, there is substantial evidence that Plaintiff's due process rights have been violated.

77.     Upon information and belief, the QAIO failed to accurately and fully state his qualifications to investigate the allegations against Plaintiff as required under DHA-PM 6025.13, Vol. 3, Encl. 3, para. p(2)(i)1,. In doing so, the QAIO lacked credibility and a foundation to make the assessment that Plaintiff failed to meet the standard of care.

78.     Upon information and belief, the QAIO erroneously conflated standards between practice areas by holding Plaintiff to a standard that is not found within Family Medicine. The failure of the QAIO to consider alternative reasons for Plaintiff's decision making with respect to his expertise demonstrates a clear bias on the part of the QAIO, and in turn, indicates that Plaintiff has been denied Due Process throughout the QAI.

79.     Upon information and belief, Plaintiff was denied access to the enclosures contained within the QAI report. The report documents nine (9) enclosures ranging from interviews with staff members, pharmacy action emails, prescription error reports, and a summary of the QAIO chart review.  None of these documents have been provided to Plaintiff and the failure to provide him with access to the evidence that purportedly supports the QAIO's findings falls

14

far short of basic notions of due process and effectively precludes Plaintiff from adequately addressing the assertions and factual contentions made by the QAIO.

80. Plaintiff should have been provided with a list of names and contact information for the individuals interviewed during the course of the investigation. This is required pursuant to DHA-PM 6025.13, Vol. 3, Encl. 3, para. P(2)(i)(i)(5). Plaintiff cannot adequately defend himself against the baseless assertions contained in the redacted QAI report due to his lack of access to the very evidence used to justify the overwhelmingly broad assertions of the QAIO. Plaintiff has effectively been denied due process in this matter and the entire report and recommendations should be disregarded based upon fundamental unfairness.

81. As a result of Defendants' policies and actions, Plaintiff has suffered and continues to suffer irreparable harm. Plaintiff is entitled to equitable relief.

82. Plaintiff is entitled to a declaration that the Defendants' have violated Plaintiff's Fifth Amendment right to Due Process and an injunction against Defendants' policy and actions. Plaintiff is entitled to the reasonable cost of this lawsuit, including his reasonable attorneys' fees.

**THIRD CAUSE OF ACTION**
**Violation of Plaintiff's Rights Under the Administrative Procedure Act**
**Agency Action Not in Accordance with Law**
**5 U.S.C. §§ 701-06**

83. Plaintiff repeats and re-alleges each of the aforementioned allegations contained in the paragraphs of this complaint.

84. Defendants are "agencies" under the APA, 5 U.S.C. § 551(1), and Defendants' actions complained of herein are "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." *Id.* § 704.

15

85. The APA prohibits agency actions that are "not in accordance with law." 5 U.S.C. § 706(2)(A). The investigation and summary suspension as applied to Plaintiff, is not in accordance with the law.

86. The Military Whistleblower Protection Act and DoD Directive 7050.6 explicitly recognize protections for Army service members.

87. It is DoD policy that "members of the Armed Forces shall be free to make a protected communication." DoD Directive 7050.06 at A-2. Any unfavorable personnel action taken against a complainant on the basis of a protected communication constitutes reprisal under MWPA and DoD Directive 7050.06.

88. Plaintiff has already suffered adverse employment action arising from his protected communications and will continue to suffer from adverse employment actions and financial harm in the future.

89. Plaintiff has been suspended from practicing medicine and relieved of his leadership roles. Plaintiff has received negative Officer Evaluation Reports.

90. The adverse actions to which Plaintiff has already suffered include Plaintiff's receipt of a General Officer Memorandum of Reprimand (GOMR),which was placed in his permanent military personnel file.

91. Further adverse actions to which Plaintiff is subject to may include: court-martial (criminal) prosecution, involuntary separation, relief for cause from leadership positions, a referred Officer Evaluation Report, involuntary transfer to the Individual Ready Reserve in a no points no pay status, removal from promotion lists, inability to attend certain military training and educational schools, loss of special pay, placement in a non-deployable status, loss of leave and travel privileges and loss of pay.

92. For the reasons set forth above, the Defendants' policy actions are not in accordance with the law withing the meaning of 5 U.S.C. § 706(2)(A), as they violate Plaintiff's rights under the Fifth Amendment.

93. Plaintiff has no adequate or available administrative remedy, or in the alternative, any effort to obtain administrative relief would be futile.

94. Plaintiff has no adequate remedy at law.

95. Plaintiff will continue to suffer harm as a result of Defendants' retributive acts absent injunctive and declaratory relief.

96. The Court should declare the Defendants' Vaccine Mandates and the denial of Plaintiff's religious accommodation request invalid and set them aside.

**FOURTH CAUSE OF ACTION**
**Violation of Plaintiff's Rights Under the Administrative Procedure Act**
**Agency Action that is Contrary to a Constitutional Right**
**(5 U.S.C. §§ 701-706)**

97. Plaintiff repeats and re-alleges each of the aforementioned allegations contained in the paragraphs of this Complaint.

98. Defendants are "agencies" under the APA, 5 U.S.C. § 551(1), and Defendants' actions complained of herein are "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." *Id.* § 704.

99. The APA prohibits agency actions that are "not in accordance with law." 5 U.S.C. § 706(2)(A). The basis for the QAI and its process as applied to Plaintiff, are not in accordance with the law.

100. The Fifth Amendment's Due Process clause prohibits the government from depriving an individual of a liberty or property interest without Due Process.

101.    As stated above in paragraphs 73-80 of this complaint, Plaintiff was not afforded fundamental fairness during the QAI investigation. Furthermore, none of Plaintiff's prior assistants were interviewed during the investigation. None of his prior patients were interviewed. No impartial and direct source of information was interviewed during the QAI investigation.

102.    DHA-PM 602.25.13, Vol.3 Encl. 3, pg. 36, para. (b) states the privileging authority, LTC Carmona, "is not bound by the recommendations of the credentials committee." Due Process is not possible if LTC Carmona remains the decision authority, as Plaintiff has leveled significant allegations against her for practicing medicine without a license, and an Equal Opportunity complaint for discrimination based on gender and national origin.

103.    For the reasons set forth above, Defendants' actions are contrary to a constitutional right within the meaning of 5 U.S.C. § 706(2)(B) as they violate Plaintiff's Due Process rights under the Fifth Amendment.

104.    Plaintiff has no adequate or available administrative remedy, or in the alternative, any effort to obtain an administrative remedy would be futile.

105.    Defendants' actions have caused Plaintiff to suffer harm. Plaintiff will continue to suffer harm absent injunctive and declaratory relief against Defendants' actions.  Plaintiff has been threatened with the loss of his clinical privileges, his reputation in the military medical community has been irreparably damaged, and he is now facing a loss of his career due to actions by the Defendants and their agents acting on their behalf.

106.    As a result of Defendants' policies and actions, Plaintiff has suffered and continues to suffer irreparable harm. Plaintiff is entitled to equitable relief.

107.   The Court should declare these actions and each of the Defendants' decisions invalid and set them aside.

**FIFTH CAUSE OF ACTION**
**Violation of Plaintiff's Rights Under the Administrative Procedure Act**
**Agency Action that Is Arbitrary, Capricious, or an Abuse of Discretion**
**(5 U.S.C. §§ 701-06)**

108.   Plaintiff repeats and re-alleges each of the aforementioned allegations contained in this Complaint.

109.   Defendants are "agencies" under the APA, 5 U.S.C. § 551(1), and Defendants' actions complained of herein are "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." *Id.* § 704.

110.   The APA prohibits agency actions that are "arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. § 706(2)(A). The Defendants' actions implementing a suspension are arbitrary, capricious, and an abuse of discretion for several reasons.

111.   DHA-PM 6025.13, Vol. 3, Encl. 3, para. M, 3(c) states that there must be exceptional circumstances to initiate an investigation against a provider when that provider has no longer been practicing under the Respective Privileging Authority for the last twenty-four (24) months. No justification has been provided for investigating Plaintiff's medical decisions long after he had left his prior duty station.

112.   DHA-PM 602.25.13, Vol.3 Encl. 3, pg. 33, para. (i)2. Clearly states the report must contain an "origin of the allegation(s) under investigation." The origins of the allegations are not stated. The Privileging Authority, LTC Carmona, was the originator of these allegations and she is the one that placed Plaintiff into summary suspension. LTC Carmona has a significant conflict of interest, which violates plaintiff's Due Process.

113.  The QAI alleged that Plaintiff inappropriately distributed medical waivers to patients. Guidance was published on September 14, 2021, by the Secretary of Defense for medical exemptions. LTC Carmona placed Plaintiff in summary suspension on September 13, 2021, before the guidance was published. The medical exemptions Plaintiff provided were in compliance with the guidance that was published. LTC Carmona officially appointed herself to make medical decisions without a license, and her self-appointment goes against the Secretary of Defense guidance stated above.

114.  By failing to recognize that Plaintiff has the liberty to practice medicine and provide informed consent to patients as required by the Nuremburg code and applicable standards of care, Defendants have acted in a manner that is arbitrary, capricious and an abuse of discretion within the meaning of 5 U.S.C. § 706(2)(A).

115.  By using speculative assumptions and theoretical possibilities that Plaintiff is not medically nor legally allowed to do a risk assessment with his patients, Defendants have acted in a manner that is arbitrary, capricious, and an abuse of discretion within the meaning of 5 U.S.C. § 706(2)(A).

116.  By allowing LTC Carmona to remain the sole decisional authority with respect to the restoration or revocation of Plaintiff's medical privileges, Defendants have acted in a manner that is arbitrary, capricious, and an abuse of discretion within the meaning of 5 U.S.C. § 716(2)(A).

117.  Plaintiff has no adequate or available administrative remedy, or, in the alternative, any effort to obtain an administrative remedy would be futile.

118.  Plaintiff has no adequate remedy at law.

119.   Plaintiff has suffered and will continue to suffer harm as a result of the Defendants' arbitrary and capricious actions absent injunctive and declaratory relief.

120.   The Court should declare the Defendants' decision invalid and set them aside.

121.   The court should determine that Plaintiff's clinical privileges should be reinstated immediately.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgement against Defendants and provide Plaintiff with the following relief:

(A)   A declaratory judgment that Defendants' actions challenged in this Complaint violate Plaintiff's rights under the Fifth Amendment to the United States Constitution;

(B)   A declaratory judgment that Defendants' actions challenged in this Complaint violate Plaintiff's rights under the Military Whistleblower Protection Act;

(C)   A declaratory judgment that Defendants' actions challenged in this Complaint violate Plaintiff's rights under the Administrative Procedure Act;

(D)   A preliminary injunction against Defendants' and their agents, servants, employees, attorneys, and all other persons and entities directly or indirectly inactive concern or participation with them that prohibits them from applying their practice of:

1.   Issuing a COVID-19 vaccine mandate to service members across the United States Army.

2.   Retributive or negative action toward any Army Physician for distributing medical waiver requests to the Vaccine Mandate.

3.   Retributive or negative action toward any Army Physician for their outspoken concerns regarding the safety of the COVID-19 vaccine, to include but not limited to the issuing of any written reprimands, initiation of retaliatory investigations, or involuntary separation from service.

(E)   A preliminary injunction against Defendants and their agents, servants, employees, attorneys, and all other persons or entities directly or indirectly in active concert or participation with them that prohibits them from making Plaintiff's non-receipt of a COVID-19 immunization the basis for any adverse action against Plaintiff, including, but not limited to: separation from service; involuntary transfer to the Individual Ready Reserves; written reprimands; and loss or delay of promotion and training opportunities, or retirement.

(F)   A preliminary and permanent injunction prohibiting the Defendants, their agents, officials, servants, employees, and any other persons acting on their behalf from continuing the ongoing credentialing investigations in Arizona, Alaska, Texas, and across the Army challenged in this Complaint;

(G)   An order declaring unlawful and setting aside Defendants' suspension of Plaintiff's medical privileges.

(H)   An order reinstating Plaintiff's clinical privileges immediately.

(I)   Plaintiff's reasonable attorneys' fees, costs, and other costs and disbursements in this action pursuant to 42 U.S.C. § 1988; and

22

(J)     All other further relief to which Plaintiff may be entitled.

Respectfully Submitted,
Tully Rinckey, PLLC


*Sean C Timmons*

Sean C. Timmons, Esq., LL.M
Texas Bar No. 24067908
Managing Partner Tully Rinckey, PLLC
Military and National Security Law Attorney
18726 University Blvd. Suite 107
Sugar Land, Texas 77479
(832) 241-5888 Phone
(832) 533-8999 Fax